# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID WADE BURFORD, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 2:16-cv-02064-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff David Wade Burford ("Burford") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Burford timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Burford filed his application for a period of disability and DIB October 4, 2013, alleging he became unable to work beginning that day. (Tr. 23, 151). After the Agency initially denied his application, Burford requested a hearing where he appeared on March 15, 2015. (Tr. 46-70). After the hearing, the Administrative Law Judge ("ALJ") denied Burford's claim on December 4, 2015.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

(Tr. 20-43). Burford sought review by the Appeals Council, but it declined his request on October 26, 2016. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On December 27, 2016, Burford initiated this action. (*See* doc. 1).

Burford was thirty-three-years-old on the alleged disability onset date (October 4, 2013) and has a high school education. (Tr. 38). Burford reported he previously worked as a general cleaner, retail stocker, caregiver, industrial cleaner, and carpet cleaner. (Tr. 65, 186, 220). After the alleged onset date, Burford continued to work part-time through the second quarter of 2015. (Tr. 160).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Burford meets the insured status requirements of the Social Security Act through December 31, 2019, and that Burford had not engaged in substantial gainful activity since his alleged onset date of October 4, 2013. (Tr. 25). At Step Two, the ALJ found Burford has the following severe impairments: major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, adjustment disorder, degenerative disc disease of the lumbar spine status post discectomy, DiGeorge Syndrome, and obesity. (*Id.*). At Step Three, the ALJ found Burford did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26-29).

Before proceeding to Step Four, the ALJ determined Burford's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined that Burford had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he can only occasionally climb ramps or stairs, and ladders, ropes or scaffolds. (Tr. 29). The ALJ further limited Burford to occasional balancing, stooping, kneeling, crouching, and crawling and to no more than simple, unskilled work, requiring understanding and carrying out of no more than simple instructions, with occasional decision-making and changes. (*Id.*).

At Step Four, the ALJ determined Burford is unable to perform any past relevant work. (Tr. 37). At Step Five, the ALJ determined, based on Burford's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Burford could perform. (Tr. 38-39). Therefore, the ALJ determined Burford has not been under a disability and denied his claim. (Tr. 39).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted). Here, substantial evidence supports the ALJ's determination Burford failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

The section titled "Argument" in Burford's brief contains a single heading: "The ALJ's RFC Findings are Not Based on Substantial Evidence Absent Development of the Record[,]" and

5

he contends "[t]here are multiple indications that the ALJ's RFC assessment is not accurate or comprehensive." (Doc. 12 at 9, 10). Although not individually labeled or separated into subsections, Burford alleges several specific errors within the argument section of his brief. (*See id.* at 9-15). Specifically, Burford contends (1) the ALJ improperly equated his ability to perform part-time "non-competitive" work with a capacity to perform sedentary work on a full-time "competitive basis" when determining his RFC (doc. 12 at 10-11); (2) that the ALJ improperly accorded too much weight to a consultative physician who examined Burford in December 2013, and should have consulted a medical expert ("ME") (*id.* at 11-12); (3) the ALJ failed to consider Burford's DiGeorge Syndrome in combination with other established impairments under the Listings (as well as in the RFC) (*id.*); (4) the Vocational Expert's ("VE") testimony is insufficient because the hypothetical includes no provision for alternate sitting and standing and the ALJ should have consulted a ME to assess the effect of fatigue (*id.* at 13-14); (5) the ALJ "did not return to a consideration of obesity in his RFC analysis" and that the condition is not adequately accommodated (*id* at 14); and (6) the ALJ should have requested and considered a ME opinion because of the "nature of an unusual combination of impairments, the interrelatedness of the impairments with an immune deficiency disorder and severe obesity" and his "inconsistent accordance of weight to examining physician opinions" (*id.* at 15).

The Commissioner responds to Burford's alleged errors in four categories, contending (1) the ALJ properly determine Burford did not meet any of the Listings; (2) the RFC is supported by substantial evidence; (3) Burford has not shown the ALJ was required to obtain testimony from a ME, and (4) the VE's testimony provides substantial evidence to support the ALJ's finding that Burford could perform other work. (Doc. 13).

Based on the heading and introduction to Burford's argument, a reader could reasonably

assume that all of Burford's alleged errors relate to the ALJ's RFC determination and decision not to obtain testimony from a medical expert. (*See* doc. 12 at 9-10). However, because Burford refers to some of the ALJ's findings other than the RFC determination, as well as the court's responsibility to scrutinize the record and ascertain whether substantial evidence support each essential administrative finding, *see Walden*, 672 F.2d at 838, the undersigned interprets Burford's claims broadly and will address all of the alleged errors, including those outside of the ALJ's RFC determination. Likewise, because the structure of the Commissioner's brief more closely follows the sequential evaluation process (which allows for a broader consideration of Burford's arguments), the undersigned will address each of Burford's alleged errors in an order similar to that proposed by the Commissioner.

**A. The ALJ Properly Determined Burford Did Not Have an Impairment or Combination of Impairments that Met or Medically Equaled the Severity of One of the Listed Impairments**

Within his argument regarding the alleged errors in the ALJ's RFC determination, Burford states that "[t]he preamble for the 14.00 Listings relating to immune deficiency disorders such as the primary (congenital) disorder of DiGeorge [S]yndrome[4] discusses the condition with coexisting impairments . . . the effects and side effects of treatment, together with the provision that medical equivalence will be considered where a Listing is not met." (Doc. 12 at 12). Burford asserts he has at least three of the "concomitant," (i.e., associated) disorders and then notes that the ALJ mentioned DiGeorge Syndrome when reporting on Burford's psychological evaluation where "a Full Scale IQ of 67 was determined as well as 'a pattern of performance and level of

---

[4] DiGeorge syndrome, or 22q11.2 deletion syndrome, is a disorder caused when a small part of chromosome 22 is missing and results in the poor development of several body systems. *See* https://www.mayoclinic.org/diseases-conditions/digeorge-syndrome/symptoms-causes/syc-20353543.

cognitive function typical for individuals with DiGeorge syndrome.'" (*Id.* citing tr. 398). Finally, without additional explanation or support, Burford concludes "[t]he ALJ erred in failing to consider this impairment in combination with the other established impairments under the Listings as well as in the RFC.[5] (*Id.*).

At Step Three of the Sequential Evaluation Process, the ALJ determines if the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments (or "Listings") describes conditions that are so severe as to prevent a person from performing any gainful activity. *See* 20 C.F.R. § 404.1525(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). Thus, a claimant meets his burden of proving disability if he establishes that his impairments meet[6] or equal[7] an impairment in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The burden is on the claimant to demonstrate that his condition meets (or equals) a listed impairment. *See Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986); *Sogue v.*

---

[5] As noted in the subheading, this section addresses whether the ALJ properly considered whether Burford had an impairment or combination of impairments that met or medically equaled a Listing. Burford's argument regarding the ALJ's consideration of his DiGeorge Syndrome in evaluating his RFC will be discussed *infra*.

[6] "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citations omitted); *see* 20 C.F.R. § 404.1525 (2015). Further, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[7] "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224; *see* 20 C.F.R. § 404.1526; *Zebley*, 493 U.S. at 530-32.

*Colvin*, NO. 2:13-cv-375-N (S.D. Ala. Apr. 30, 2014).

Burford does not carry his burden to show the ALJ failed to evaluate whether his DiGeorge Syndrome, alone or in combination with his other impairments, satisfies one of the 14.00 series Listings. The Eleventh Circuit has explained the requirements as follows:

> [W]hen a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.

*Bell*, 796 F.2d at 1353.

Not only does Burford fail to point to specific medical findings that show a Listing's description is met or to present medical evidence that describes how there is an equivalency, Burford neglects to identify which of the 14.00 Series of Listings he allegedly met or equaled. Burford's statement that he has "at least three of these concomitant disorders" referenced in the preamble of the 14.00 serious Listings is insufficient. Additionally, to the extent Burford cites his IQ score, the ALJ fully considered Burford's IQ when considering Listings 12.02 and 12.05. (Tr. 26-28). Burford does not challenge the ALJ's finding that Listings 12.02 and 12.05 were not met,[8] and has not shown how his condition(s) meets or equals a 14.00 series Listing.

## B. The ALJ's RFC Determination is Supported by Substantial Evidence

Burford argues the ALJ's RFC findings are not based on substantial evidence, alleging the ALJ improperly equated his ability to perform part-time "non-competitive" work with a capacity

---

[8] The undersigned does not construe the reference to Burford's IQ score as a challenge to the ALJ's findings on Listings 12.02 and 12.05. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006); *see also N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

9

to perform sedentary work on a full-time "competitive basis" (doc. 12 at 10-11), improperly accorded too much weight to a consultative physician who examined Burford in December 2013 (*id.* at 11-12), failed to consider his DiGeorge Syndrome in combination with other established impairments (*id.*), and "did not return to a consideration of obesity in his RFC analysis" and the condition is not adequately accommodated (*id.* at 14).

To determine if Burford could perform his past relevant work at Step Four of the Sequential Evaluation Process, or if he could perform other work at Step Five, the ALJ had to first assess Burford's RFC – the most a claimant can do despite his physical and mental limitations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), (e), (g), 404.1545(a); Social Security Ruling (SSR) 96-8p, 1996 WL 374184. At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). To assess a claimant's RFC, the ALJ evaluates of all relevant evidence, including the medical evidence and the claimant's own statements concerning his abilities and limitations. *See* 20 C.F.R. § 404.1545(a); SSR 96-8p.

### 1. The ALJ Properly Considered Burford's DiGeorge Syndrome in Combination with His Other Impairments

Burford was diagnosed with major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, adjustment disorder, degenerative disc disease of the lumbar spine, DiGeorge Syndrome, and obesity. However, diagnoses do not necessarily establish work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). Thus, the ALJ first evaluated Burford's musculoskeletal problems,[9] and noted "the evidence supports significant, but not disabling, symptoms and limitations." (Tr. 30). The ALJ cited Burford's complaints of pain, abnormal

---

[9] Burford does not challenge the ALJ's RFC determination as it relates to his mental impairments. (*See* doc. 12 at 9-15).

diagnostic studies, and treatment, including eventual back surgery (microscopic lumbar discectomy at L4-5) in March 2014. (Tr. 30-33). The ALJ also noted throughout the record, Burford's strength was significantly persevered, he did not always use a cane to ambulate, and he often had unremarkable range of motion. (Tr. 31). The ALJ also pointed to an MRI of Burford's lumbar spine taken in August 2014 that revealed no evidence of nerve encroachment. (Tr. 32). In addition, the ALJ noted the record reflected "some responsiveness to treatment," although he acknowledged Burford continued to experience back and related problems following surgery. (Tr. 31). The ALJ noted, "[t]hat being said, the record also reflects some responsiveness to treatment, some benign objective findings, as well as a work history that is more consistent with the restrictions in the residual functional capacity than disabling limitations." (Tr. 31).

Prior to considering Burford's mental impairments, the ALJ specifically considered Buford's DiGeorge Syndrome. (Tr. 33). The ALJ noted Burford consistently denied cardiac abnormalities (including in March 2014, June 2014, and February 2015), his treating physician noted his condition as "simply being followed, without evidence of any significant treatment," and further noted there was no substantial evidence that Burford had any physical manifestations as a result of the condition. (Tr. 33, 337, 443, 473). The ALJ did note that, "to the extent there may be some such [physical] manifestations (such as the alleged fatigue)," which Burford refers to in his brief, "those symptoms and limitations would be accommodated by the significant exertional and postural restrictions in the residual functional capacity." (Tr. 33, 328). The ALJ's written decision shows that the ALJ properly considered Burford's DiGeorge syndrome when making his RFC finding, specifically considering the allegations of fatigue Burford now complains should have been considered. Buford points to nothing to show the ALJ erred in making this determination.

11

### 2. The ALJ Properly Considered Burford's Obesity in Combination with His Other Impairments

Burford specifically alleges the ALJ failed to consider his obesity when determining his RFC and that his obesity is not adequately accommodated in the RFC. (Doc. 12 at 14). Although he references his Body Mass Index ("BMI") and cites SSR 02-1p's discussion of the possible effects of obesity in his brief, Burford fails to cite any objective evidence that his weight, either alone or in combination with his other impairments, affected his ability to work beyond the restrictive limitations the ALJ found. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). Moreover, after specifically referencing Burford's BMI earlier in the sequential evaluation process and stating "[t]he undersigned has considered the effects of the claimant's obesity in each step of the sequential evaluation process, including the listings analysis and the determination of a residual functional capacity for the claimant" (tr. 26), the ALJ specifically referred to Burford's obesity twice during his RFC analysis (tr. 31, 36). Burford has not shown that the ALJ failed to consider his obesity or that any further consideration would cause additional limitations.

### 3. The ALJ Properly Considered and Accorded Weight to the Opinion of Examining Medical Consultant Jason Markle, D.O.

Burford contends the ALJ erred when he accorded "great weight" to the opinion of "the consultative physician who examined [] Burford in December 2013," after the documentation of his candidacy for back surgery but before the surgery was performed. (Doc. 12 at 11). Burford points out that the consultant examiner (who is Jason Markle, DO (*see* tr. 31, 321-326)) was not provided with medical records and alleges "his opinion is wholly inconsistent with the treating record[] and entitled to no weight." (Doc. 12 at 11).

When determining the weight to give a doctor's opinion, an ALJ considers numerous factors, including the doctor's examining and treating relationship with the claimant, the evidence

the doctor presents to support his or her opinion, how consistent the opinion is with the record as a whole, the doctor's specialty, and other factors. *See* 20 C.F.R. § 404.1527(c). A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188. An ALJ may discount a treating physician's opinion when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c).

Following his examination in December 2013, Dr. Markle opined Burford was capable of a reduced range of sedentary work. (Tr. 36, 325-26). In assessing the opinion, the ALJ noted that, although not a treating physician, Dr. Markle had the benefit of examining Burford and found Dr. Markle's opinion consistent with the examination as well as with Burford's post-surgery work activity. (Tr. 36). Although Dr. Markle did not review the record (his opinion was based on examining Burford), the ALJ's decision shows that the ALJ carefully considered the record and further recognizes that Burford experienced some change in ability since Dr. Markle's examination and opinion. (*Id.*). Specifically, the ALJ noted that the significant restrictions in Dr. Markle's opinion reflect the severity of Burford's degenerative disc disease and obesity and therefore assigned the opinion great weight. (*Id.*). The ALJ then expressly noted that the opinion was from before Burford's surgery, and said that to accommodate Burford's post-surgery musculoskeletal problems, he limited Burford to sedentary work. (*Id.*). Thus, there is substantial evidence to support the ALJ's decision to accord Dr. Markel's opinion great weight.

To the extent Burford complains the ALJ improperly accorded Dr. Markle's opinion more weight than "a treating physician who is a neurosurgeon['s opinion]" (doc. 12 at 11), the ALJ's

13

decision to discount Dr. Charles Clark's opinion is supported by substantial evidence. Specifically, the ALJ noted that there were "a number of work capacity statements" from Dr. Clark, Burford's neurosurgeon. (Tr. 36). The ALJ accorded the statements "little weight" because they did not provide a function-by-function assessment of Burford's work-related abilities and did not purport to impose limitations lasting twelve or more months. (*Id.*). The ALJ further found the work capacity statements inconsistent with Burford's complaints, treatment, and examination findings. (Tr. 36, 310, 370, 393, 555). These expressly stated reasons provide substantial evidence for discounting Dr. Clark's work capacity statement opinions.

### 4. The ALJ Properly Considered Burford's Work History

Burford specifically contends the ALJ improperly "equate[d] [Burford's] ability to perform part time non competitive work with a capacity to perform sedentary work on a full time competitive basis" when determining his RFC. (Doc. 12 at 10-11). Burford alleges this was "speculative at best, lacking any medical foundation, and tantamount to substitution of judgment for that of a physician." (*Id.* at 11). Burford's argument lacks factual and regulatory support.

The ALJ did not improperly "equate" Burford's ability to perform part-time-work with the capacity to perform full-time work. Instead, the ALJ properly concluded that Burford's post-surgery work history showed an ability to perform heavy work on a part-time basis, and noted "[t]he fact that he was able to perform this physically taxing work (the vocational expert classified this job as 'heavy' work), supports a finding that the claimant would be able to perform sedentary duties on a full-time basis. (Tr. 33). This type of analysis is proper and contemplated by the regulations. Specifically, the regulations expressly provide that the work a claimant has done anytime during which the claimant alleges he is disabled may show that he is able to work at the substantial gainful activity ("SGA") level, even if the work was not at the SGA level. *See* 20

14

C.F.R. §416.971; *see e.g., Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012). Furthermore, the responsibility for assessing a claimant's RFC belongs to the ALJ; it is not a medical assessment. *See* 20 C.F.R. § 404.1546(c). The ALJ did not err when he considered Burford's post-surgery work history as part of his RFC analysis.

### C. The ALJ Was Not Required to Obtain Testimony from a Medical Expert

At multiple places throughout his brief, Burford suggests the ALJ should have further developed the record by obtaining testimony from a medical expert ("ME").[10] (Doc. 12 at 12, 13, 15). Although the ALJ has an obligation to develop a full and fair record, there must be a showing of prejudice before the reviewing court can find that the claimant's right to due process was violated to such a degree that remand for further development is warranted. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Prejudice exist where the record contains evidentiary gaps that may cause the ALJ to reach an unfair determination due to the lack of evidence. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). When the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ is not required to obtain medical expert testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). The Commissioner argues Burford fails to show that ME testimony was necessary for the ALJ to make an informed decision and that he was prejudiced by the failure to develop the record. (Doc. 13 at 18).

Although there are times when the lack of record evidence prevents the ALJ from making an informed decision, that is not the case here. Essentially, Burford is arguing that a ME would have done a better job than the ALJ. Buford has not shown prejudice from a lack of medical evidence. Furthermore, any argument that testimony from an ME would help Burford's claim is

---

[10] More precisely, Burford contends that "[a] medical expert (ME) might better determine . . ." certain issues (doc. 12 at 12) or "[a]n ME might better assess" (*id.* at 13) and that the option of utilizing a ME "was reasonably indicated" (*id.* at 15).

15

mere speculation without evidentiary support, which is lacking. Because Burford fails to show how the ALJ's decision not to obtain testimony from a medical expert prevented the ALJ from making an informed decision or prejudiced him, this claim fails.

### C. The Vocational Expert's Testimony Provides Substantial Evidence to Support the ALJ's Finding that Burford Could Perform Other Work

While discussing the role of the Vocational Expert ("VE"), Burford takes issue with the ALJ's failure to include a provision for alternative sitting and standing in his RFC,[11] contending "[t]he VE's testimony does not constitute substantial evidence absent a comprehensive hypothetical. (Doc. 12 at 13). Although presented in the context of the VE's testimony, it appears Burford is, again, pointing to an alleged error in the ALJ's assessment of his RFC, i.e., the failure to include a sit/stand option, and further arguing that a ME "might better assess the effects of the combined conditions including fatigue on the physical and mental stamina impacting" his ability to work. (*Id.*). To the extent Burford challenges the absence of a sit/stand option in the RFC or the ALJ's failure to consult a ME on the subject, the argument regarding the need for a ME is addressed *supra*. As for the failure to include a sit/stand opinion in the RFC, Buford fails to develop this argument, referencing it only as an example that an ME "might better assess." He points to nothing in the record to support the requirement of such an accommodation. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006); *see also N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

To the extent Burford challenges the VE's testimony, the record shows that VE's testimony provides substantial evidence to support the ALJ's finding that Burford could perform other work.

---

[11] Despite this, Burford also contends a provision for alternative sitting and standing "would not adequately provide relief in the context of continued worked." (Doc. 12 at 13).

At Step Five, the ALJ determines whether a significant number of jobs exist in the national economy that a claimant can perform. *See Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). An ALJ may make this determination by either applying the Medical Vocational Guidelines or by obtaining testimony of a VE. *Phillips*, 357 F.3d at 1239-40. For a VE's testimony to constitute substantial evidence on the issue of whether a significant number of jobs exist in the national economy that someone with the claimant's limitations could perform, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

After determining Burford's RFC, the ALJ proceeded to Step Four of the Sequential Evaluation Process and found that Burford was unable to perform any past relevant work. (Tr. 37). *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). Therefore, the ALJ proceeded to Step Five to determine if Burford could perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(v), (g); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). When a claimant proves he cannot perform his past relevant work, the burden shifts to the Commissioner to produce evidence that other work exists that the claimant could perform given his RFC and other vocational characteristics. *See Doughty*, 245 F.3d at 1278 n.2. The claimant still must prove that he cannot perform the jobs identified by the Commissioner to meet his burden of proving he was disabled. *See id*.

To assist him in determining whether Burford could perform other work, the ALJ obtained testimony from a VE. (Tr. 65-69). *See* 20 C.F.R. §§ 404.1560(c); *Phillips v. Barnhart*, 357 F.3d 1232, 1242-44 (11th Cir. 2004). In response to the ALJ's hypothetical questions, the VE testified that an individual with Burford's limitations could perform jobs such as lens inserter, dowel inspector, and cuff folder. (Tr. 67). The ALJ was not required to include an option to alternate between sitting and standing in the hypothetical to the VE because the ALJ is only required to

17

include limitations he or she finds supported by the record, *see McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987), and the ALJ determined that a sit/stand option was not supported by the record when assessing Burford's RFC (tr. 29-33).

The ALJ properly relied on the VE's testimony, together with the framework of the Medical-Vocational Guidelines, to find Burford could perform other work and was not disabled. (Tr. 38-39). *See* 20 C.F.R. §§ 404.1569, 404.1569a; 20 C.F.R. pt. 404, subpt. P, app. 2, table no. 3, § 202.22.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Burford's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 11th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE